UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DANIEL TITUS-PHILLIPS,

               Plaintiff,

        -against-

BRITISH AIRWAYS PLC,

               Defendant.
------------------------------------------------------------------X

Civil Action No.:

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff Daniel Titus-Phillips, by his attorneys, LaRocca Hornik Rosen & Greenberg LLP, for his complaint against defendant British Airways PLC ("British Airways"), respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action for unlawful retaliation, discrimination, and defamation under the whistleblower provisions of the New York State Labor Law ("NYLL"), the anti-discrimination provisions of the New York City Human Rights Law ("NYCHRL"), and New York common law.  Specifically, British Airways unlawfully terminated plaintiff's employment in retaliation for his reporting of a serious safety issue involving the falsification of safety and inspection records for an international commercial airline jet, as well as his protected complaints that he was being subjected to a hostile work environment because of his race and Indian national origin.  Following the termination of his employment, British Airways further defamed plaintiff by maliciously publishing an e-mail to plaintiff's former colleagues falsely stating that plaintiff's employment had been terminated because he had "fabricated" evidence and had been "untruthful" in connection with "an investigation around safety and airworthiness, raising serious concerns."

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between diverse parties and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b) & (c) because a substantial part of the events or omissions giving rise to this action occurred in this district and British Airways is subject to personal jurisdiction in this district.

## THE PARTIES

4. Plaintiff resides in Elmhurst, New York.

5. British Airways "is a citizen of England and only England, and not a citizen of any U.S. state" and its "principal place of business is located in England." *Brauner v. British Airways PLC*, 2012 WL 1229507, * 5 (E.D.N.Y. April 12, 2012).

6. Plaintiff is a former employee of British Airways.

## FACTUAL ALLEGATIONS

7. Plaintiff was employed by British Airways as an engineer for nearly 24 years.

8. Between May 1996 and March 2014, plaintiff worked at Mumbai Airport, Delhi Airport, Bangalore Airport, and Hyderabad Airport in India.

9. In April 2014, plaintiff was transferred from Hyderabad Airport to J.F.K. Airport in Queens, New York.

10. Plaintiff held the position of Duty Maintenance Manager at J.F.K. Airport from April 2014 until the unlawful termination of his employment on January 16, 2020.

11. As a Duty Maintenance Manager at J.F.K. Airport, plaintiff was principally responsible for inspecting and servicing aircraft for various airlines on behalf of British Airways, including Norwegian Airlines, All Nippon Airways, Iberia, and Qatar Airways.

12. On November 23, 2019, plaintiff carried out an inspection of a window fogging issue that was reported on a Norwegian Airlines aircraft (registration number DI7017/7018) in accordance with the approved technical publication.

13. Following an investigation of the issue, plaintiff properly cleared the suspected defect in the aircraft technical log ("ATL").

14. The next day, on November 24, 2019, plaintiff was inspecting the same Norwegian Airlines aircraft and discovered that the window fogging issue was again reported in the ATL.

15. Plaintiff conducted an inspection of the window, including an exterior inspection, but did not observe any apparent issues.

16. However, as the window fogging issue had been identified two days in a row, plaintiff wanted to confirm that he was following the most updated inspection protocols before clearing the suspected defect in the ATL.

17. In order to do so, plaintiff needed to obtain a WiFi connection, which would allow him to download any updated inspection protocols onto his work iPad.

18. As there was no WiFi connection available on the Norwegian Airlines aircraft, plaintiff was required to return to his office to download any updated inspection protocols.

19. Given that the window fogging issue had not yet been resolved, plaintiff could not sign-off on the resolution of the issue on the ATL before leaving the Norwegian Airlines aircraft.

20. At that time, British Airways had severe and dangerous shortages of personnel for the inspection and servicing of aircraft.

21. These severe and dangerous personnel shortages caused flight delays and cancellations, which were embarrassing and damaging to British Airways' business.

22. These severe and dangerous personnel shortages caused serious safety issues.

23. Due to these severe and dangerous personnel shortages (as well as the mismanagement of British Airways staff), plaintiff was required to attend to two other grounded aircraft in two different remote locations of J.F.K. Airport prior to returning to his office.

24. Plaintiff returned to his office immediately after he attended to these two other aircraft, at which time he checked for any updated inspection protocols (for which there were none).

25. While plaintiff was away from the Norwegian Airlines aircraft tending to these duties, Dionne Way—also a Duty Maintenance Manager for British Airways—boarded the Norwegian Airlines aircraft.

26. Ms. Way is the wife of Thomas Barrett, who as the Station Maintenance Manager for British Airways at J.F.K. Airport, was plaintiff's direct supervisor.

27. Mr. Barrett and Ms. Way, who are both white Welsh citizens, had an ongoing history of repeatedly bullying, harassing, and maligning plaintiff on the job because of his race and Indian national origin.

28. Mr. Barrett and Ms. Way referred to plaintiff as "red dot," a humiliating and derogatory slur pertaining to plaintiff's race and Indian national origin.

29. Mr. Barrett maliciously and intentionally interfered with and sought to disrupt plaintiff's work and informed plaintiff that he needed to be "shit on."

30. In 2018 and 2019, plaintiff made a number of protected complaints to his supervisors regarding the harassing and discriminatory conduct of Mr. Barrett and Ms. Way,

4

including Stephen England, Christopher Rickard, and Dalibor Janceski, but they ignored his complaints.

31. While Ms. Way was on the Norwegian Airlines aircraft, she brazenly forged plaintiff's signature on the ATL, falsely certifying that the window fogging issue had been resolved.

32. Ms. Way made this false certification despite the fact that she had no knowledge of whether the window fogging issue was resolved by plaintiff.

33. Ms. Way's wrongful certification of the ATL was a serious breach of safety protocols, as, among other things, a defective window on an aircraft can place the health and safety of the aircraft passengers at risk.

34. After falsifying the ATL, Ms. Way presented it to the Norwegian Airlines pilot for his review and acceptance.

35. She did not notify the pilot that she had falsified the ATL.

36. While Ms. Way was still on the Norwegian Airlines aircraft, plaintiff returned to the aircraft to complete the ATL and certify the aircraft for flight.

37. When Ms. Way saw that plaintiff had returned to the Norwegian Airlines aircraft, she quickly departed the aircraft without informing plaintiff that she had falsified the ATL.

38. The ATL is a carbon copy document. The original sheet on top is white and there are green, blue, pink, and yellow carbon copies underneath.

39. Prior to departing the aircraft, Ms. Way took the blue carbon copy from the ATL, which is required to be maintained at J.F.K. Airport.

40. Ms. Way breached protocol by removing the blue carbon copy from the ATL before the fuel numbers were entered on the ATL and prior to the pilot signing his acceptance on the top right-hand corner of the ATL.

41. After returning to the aircraft, plaintiff discovered the falsified ATL.

42. Plaintiff informed the pilot that he did not sign his signature in the ATL and that there was pending work on the aircraft that still needed to be certified.

43. Plaintiff then proceeded to properly close out the ATL by recording the remaining inspection tasks he conducted with respect to resolving the window fogging issue.

44. Plaintiff also handwrote the fuel numbers on the ATL for the pilot—with the handwriting of the fuel numbers undeniably belonging to plaintiff—and the pilot signed-off on the fuel numbers.

45. Plaintiff's handwriting with the fuel numbers, along with other handwriting that he added to the ATL upon returning to the aircraft, is contained on the top white page of the ATL, as well as the green, pink, and yellow carbon copies of the ATL.

46. Because Ms. Way removed the blue carbon copy, plaintiff's handwriting with the fuel numbers, along with the other handwriting that he added to the ATL upon returning to the aircraft, was not contained on the blue copy of the ATL.

47. Recognizing the seriousness of the falsification issue, plaintiff scanned a copy of the completed ATL on his cell phone while he was on the aircraft and retained a green colored carbon copy of the ATL.

48. The scanned ATL is date and time-stamped to establish plaintiff's presence on the Norwegian Airlines aircraft before it departed.

49. Following his exit from the Norwegian Airlines aircraft, plaintiff provided the green copy of the ATL to Hassan Ahmed, the Departing Mechanic, to present to Ms. Way who was required to provide it to Boeing, the manufacturer of the aircraft which collects ATLs containing any inspection issues with its aircraft.

50. However, instead of submitting the green copy that was completed by plaintiff, Ms. Way knowingly and deliberately submitted the blue carbon copy of the falsified ATL to Boeing that she removed from the aircraft prior to plaintiff adding the fuel numbers and other information.

51. Plaintiff discovered the green carbon copy on his desk the next day.

52. After due deliberation and being fearful of losing his job and otherwise retaliated against for reporting Ms. Way's unlawful conduct, plaintiff determined that he could not let this serious safety issue go unreported.

53. On December 18, 2019, plaintiff filed a formal safety report on the electronic British Airways Safety Information System ("eBASIS") regarding Ms. Way's forgery and blatant disregard of safety protocols.

54. eBASIS is a system that tracks the safety and security of British Airways' aircraft and is used by the United Kingdom's Civil Aviation Authority to monitor and manage air safety.

55. eBASIS is supposed to be a nonpunitive tracking system so that individuals such as plaintiff are encouraged to report safety and security issues without fear of reprisal.

56. Because plaintiff filed his safety report on eBASIS as a mandatory occurrence report ("MOR"), British Airways was required to report this MOR to the U.K. C.A.A.

57. On December 27, 2019, plaintiff also complained to British Airways once again that he had been bullied, harassed, and maligned for months by Mr. Barrett and Ms. Way because of his race and Indian national origin.

58. Just two weeks later, on January 16, 2020, British Airways—through Mr. Barrett and other complicit individuals such as Stephen England and Gary Howorth—unlawfully terminated plaintiff's 24-year employment with British Airways.

59. British Airways falsely premised its unlawful termination of plaintiff's employment on the false and absurd assertion that plaintiff never returned to the Norwegian Airlines aircraft prior to its departure.

60. British Airways did not terminate Ms. Way's employment despite her forgery and violations of law.

61. Ms. Way was never disciplined by British Airways despite her serious breach of safety policies and protocols.

62. Ms. Way was not disciplined because she is white and Welsh.

63. The falsification of ATLs and similar safety and maintenance records is illegal.

64. Adding further insult to injury, on January 16, 2020, Stephen England, an Area Maintenance Manager, acting within the scope of his employment with British Airways, maliciously circulated a false and defamatory e-mail to plaintiff's former colleagues stating that plaintiff's employment was terminated because he had "fabricated" evidence in his favor and had been "untruthful" in connection with "an investigation around safety and airworthiness, raising serious concerns."

65. The foregoing unlawful behavior was part and parcel of the long-standing harassment and unlawful discrimination that plaintiff suffered during his employment with British Airways.

66. Throughout his tenure at J.F.K. Airport, plaintiff was the lowest paid Duty Maintenance Manager despite being the most senior credentialed.

67. Plaintiff was repeatedly denied the opportunity to receive further training and obtain additional qualifications in order to rise through the ranks at British Airways.

68. In 2019, plaintiff was denied a promotion to the position of Station Maintenance Manager on three separate occasions despite his obvious qualifications.

69. Plaintiff successfully served as interim Station Maintenance Manager at J.F.K. Airport for approximately 9 months in 2019 when the acting Station Maintenance Manager was out of work, but he was still denied a promotion to this position.

70. Instead, this promotion was awarded to Stephen England, the white British citizen who circulated the defamatory e-mail regarding plaintiff.

71. The position was then subsequently awarded to Mr. Barrett, who harassed and discriminated against plaintiff and whose wife forged plaintiff's signature on the ATL.

72. Plaintiff was treated differently than other similarly situated employees who were not of his race and Indian national origin, including, but not limited to, Ms. Way.

## FIRST CLAIM FOR RELIEF
**(Retaliatory Discharge under the NYLL)**

73. Paragraphs 1 through 72 are realleged.

74. Section 740(2) of the NYLL states: "[a]n employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety…; (b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such violation of a law, rule or regulation by such employer; or (c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation."

75. At all relevant times, British Airways was an "employer" within the meaning of NYLL § 740(1)(b).

76. At all relevant times, plaintiff was an "employee" of British Airways within the meaning of NYLL § 740(1)(a).

77. British Airways violated NYLL § 740 by terminating plaintiff's employment because plaintiff filed a formal written complaint with British Airways stating that Dionne Way had forged his signature on the ATL falsely certifying that plaintiff had completed a necessary inspection of the Norwegian Airlines aircraft that plaintiff had not yet completed.

78. The falsification of safety and maintenance records for aircraft is illegal and creates substantial and serious safety issues for aircraft passengers and personnel.

79. British Airways also violated NYLL § 740 by terminating plaintiff's employment because plaintiff objected to and refused to be complicit in Ms. Ways' forgery or British Airways' subsequent attempts to cover-up Ms. Ways' forgery.

80. Plaintiff seeks damages in an amount to be determined at trial, including, without limitation, compensation for lost wages, benefits, and other remuneration as well as reasonable costs, disbursements, and attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**(Race and National Origin Discrimination Under the NYCHRL)**

81. Paragraphs 1 through 80 are realleged.

82. Section 8-107(1) of the NYCHRL provides that "[i]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation or alienage or citizenship status of any person: (1) to represent that any employment or position is not available when in fact it is available; (2) to refuse

to hire or employ or to bar or to discharge from employment such person; or (3) to discriminate against such person in compensation or in terms, conditions or privileges of employment."

83.     British Airways discriminated against plaintiff and subjected him to a hostile work environment because of his race and Indian national origin.

84.     British Airways unlawfully terminated plaintiff's employment because of his race and Indian national origin.

85.     Plaintiff seeks damages in an amount to be determined at trial, including, without limitation, all lost wages and benefits, compensatory damages for mental, emotional, and physical injuries, distress, pain and suffering and injury to his reputation, punitive damages, and reasonable costs, disbursements, and attorneys' fees.

**THIRD CLAIM FOR RELIEF**
**(Retaliation Under the NYCHRL)**

86.     Paragraphs 1 through 85 are realleged.

87.     Section 8-107(7) of the NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.  The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of

11

employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

88. British Airways unlawfully retaliated against plaintiff by terminating his employment because he made protected complaints to British Airways regarding the unlawful discrimination and harassment against him by British Airways, including Dionne Way and Thomas Barrett.

89. Plaintiff seeks damages in an amount to be determined at trial, including, without limitation, all lost wages and benefits, compensatory damages for mental, emotional, and physical injuries, distress, pain and suffering and injury to his reputation, punitive damages, and reasonable costs, disbursements, and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**(Employer Liability Under the NYCHRL)**

90. Paragraphs 1 through 89 are realleged.

91. Section 8-107(13) of the NYCHRL provides that "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this action…[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: i) the employee or agent exercised managerial or supervisory responsibility; or ii) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercise managerial or supervisory responsibility; or iii) the employer

12

should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

92. British Airways violated § 8-107(13) of the NYCHRL as set forth herein.

93. Plaintiff seeks damages in an amount to be determined at trial, including, without limitation, all lost wages and benefits, compensatory damages for mental, emotional, and physical injuries, distress, pain and suffering and injury to his reputation, punitive damages, and reasonable costs, disbursements, and attorneys' fees.

### FIFTH CLAIM FOR RELIEF
(Defamation *per se*)

94. Paragraphs 1 through 93 are realleged.

95. British Airways maliciously made a false statement of fact about plaintiff stating that plaintiff's employment had been terminated because he had "fabricated" evidence in his favor and had been "untruthful" in connection with "an investigation around safety and airworthiness, raising serious concerns."

96. British Airways' statement was of and concerning plaintiff.

97. British Airways' statement was defamatory *per se*.

98. British Airways made the statement knowing it was false or recklessly disregarding its truth or falsity.

99. In making the statement, British Airways was motivated by spite and ill-will towards plaintiff.

100. Plaintiff suffered emotional and economic harm as well as injury to his reputation as a result of British Airways' false and defamatory statement of fact.

**WHEREFORE**, plaintiff prays for relief as follows:

a) On the First Claim for Relief, retaliatory discharge under the NYLL, damages in an amount to be determined at trial, including, without limitation, compensation for lost wages, benefits, and other remuneration as well as reasonable costs, disbursements, and attorneys' fees;

b) On the Second Claim for Relief, race and national origin discrimination under the NYCHRL, damages in an amount to be determined at trial, including, without limitation, all lost wages and benefits, compensatory damages for mental, emotional, and physical injuries, distress, pain and suffering and injury to his reputation, punitive damages, and reasonable costs, disbursements, and attorneys' fees;

c) On the Third Claim for Relief, retaliation under the NYCHRL, damages in an amount to be determined at trial, including, without limitation, all lost wages and benefits, compensatory damages for mental, emotional, and physical injuries, distress, pain and suffering and injury to his reputation, punitive damages, and reasonable costs, disbursements, and attorneys' fees;

d) On the Fourth Claim for Relief, employer liability under the NYCHRL, damages in an amount to be determined at trial, including, without limitation, all lost wages and benefits, compensatory damages for mental, emotional, and physical injuries, distress, pain and suffering and injury to his reputation, punitive damages, and reasonable costs, disbursements, and attorneys' fees;

e) On the Fifth Claim for Relief, defamation *per se*, ordering British Airways to retract any and all defamatory statements and apologize for such statements, compensatory damages in an amount to be determined at trial, and punitive damages; and

f) All such other and further relief as the Court may deem equitable, just, and proper to remedy British Airways' unlawful practices and tortious conduct.

Dated: New York, New York
October 23, 2020

                                              LAROCCA HORNIK ROSEN
                                              & GREENBERG LLP

                                              /s/ *Patrick McPartland*
                         By: _____
                                              Patrick McPartland (PM-4225)
                                              Jared E. Blumetti (JB-1214)
                                              Katelyn Canning (KC-9782)
                                              40 Wall Street, 32nd Floor
                                              New York, New York 10005
                                              T: (212) 530-4837, 4831, 4839
                                              E: pmcpartland@lhrgb.com
                                                 jblumetti@lhrgb.com
                                                 kcanning@lhrgb.com

                                              *Attorneys for plaintiff*
                                              *Daniel Titus-Phillips*